OPINION OF THE COURT

STAPLETON, Circuit Judge:
Billie Jo Gilroy appeals from a summary judgment entered in favor of the Commissioner in this Social Security disability case. Because we write only for the benefit of the parties, we assume familiarity with the facts and the proceedings in the District Court. We will affirm.
I.
The record before the ALJ contained reports from a treating psychiatrist, Dr. Wang. One of those reports, dated February 23, 2006, includes a Global Assessment of Functioning (“GAF”) score of 45. Gilroy insists that the ALJ erred by failing to “explain why he was rejecting [that score] or how he thought it could be reconciled with his own conclusions.” Appellant’s Br. at 10.
As Gilroy correctly points out, Dr. Wang’s report “did not express any opinions regarding specific limitations” that Gilroy had. Appellant’s Br. at 14. It did, however, report a GAF score of 45. A GAF score of 41 to 50 indicates that in the opinion of the evaluator the patient has:
Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).
Diagnostic and Statistical Manual of Mental Disorders, TR at 34 (boldface in original). A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings, 66 Fed.Reg. 50764-5 (2000), and a GAF score of 45, if credited, would not require a finding of disability. In the con *716 text of his report, Dr. Wang’s GAF 45 rating is fairly understood to convey that he believed Gilroy had a serious impairment in social or occupational functioning. This belief is not further explained, however.
The ALJ concluded that Gilroy had not been under a disability within the meaning of the Social Security Act from June 15, 2003, through April 11, 2007, the date of his decision. His opinion summarizes the evidence in the context of the five-step analysis required by the regulations. It found that the claimant had the following medically ascertainable “severe” impairments: bipolar disorder, major depression disorder, and post-traumatic stress disorder. With appropriate explanations, it further concluded that the claimant had “moderate” limitations with respect to maintaining social functioning and with respect to maintaining concentration, persistence and pace at work-related tasks. With respect to Gilroy’s overall residual functional capacity, the ALJ ultimately concluded as follows:
I find that the claimant does not have any exertional limitations. She retains the ability to perform simple, routine, repetitive tasks and make simple decisions. Her social anxiety limits her ability to interact with supervisors and coworkers and precludes interaction with the public. Additional limitations are not well supported by the totality of evidence.
App. at 31a.
The ALJ’s opinion clearly reflects substantial evidence supporting this conclusion and adequately explains why the evidence relied upon by Gilroy did not persuade him that she had more serious limitations. While it did not make explicit reference to Dr. Wang’s one-time rating of GAF 45, it did make repeated references to observations from Dr. Wang’s reports. Given the failure of Dr. Wang to “express any opinions regarding specific limitations” or otherwise to explain the basis for his GAF rating, we are at a loss to understand how the ALJ could have responded to that rating in a more satisfactory manner. As we have noted, he did explain his views on the degree of Gilroy’s limitations with respect to social and occupational functioning and did conclude that “her social anxiety limits her ability to interact with supervisors and coworkers and precludes interaction with the public.” This conclusion is not in conflict with Dr. Wang’s GAF rating, and no further comment was required.
II.
Both Gilroy and her husband testified before the ALJ concerning her impairments and their impact on her ability to work. Their testimonies did not materially differ. The ALJ found their testimony “only partially credible”:
I find the testimony concerning the claimant’s impairments and their impact on her ability to work only partially credible in light of the desci’iption of her daily activities and life style, the objective medical evidence of record and treating medical opinions regarding the severity of the claimant’s condition and functional limitations. The testimony of the claimant’s spouse has also been considered.
App. at 30a. Gilroy insists that the ALJ erred by failing to explain his rejection of her husband’s testimony. We are unpersuaded. In context, we understand from the above-quoted segment of his opinion that the ALJ only partially credited her husband’s testimony for the same reasons that he only partially credited hers.
III.
The sixth sentence of 42 U.S.C. § 405(g) provides in relevant part that the *717 “Court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.” Gilroy invoked this authority by asking the District Court to remand her case to the Commissioner so that three additional items of evidence could be considered: (1) a report of a mental evaluation conducted by Dr. Lindsay Groves on August 30, 2007; (2) a report of a mental evaluation conducted by Dr. Chantal Deines on June 6, 2008; and (3) a notice of award of Social Security disability benefits dated August 1, 2008. The District Court declined to remand for this purpose. It did not abuse its discretion in doing so.
As we explained in Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984) (internal citations omitted):
As amended in 1980, § 405(g) now requires that to support a “new evidence” remand, the evidence must first be “new” and not merely cumulative of what is already in the record. Second, the evidence must be “material;” it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary’s determination. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.
Gilroy has failed to show good cause why Dr. Groves’ evaluation and report could not have been secured for presentation to the ALJ. She also has failed to show that it would create a reasonable possibility of a change in the ALJ’s decision. Dr. Groves’ report adds little to that of Dr. Wang and does nothing to alter the facts supporting the ALJ’s finding that the claimant’s mental impairments were severe, but not disabling.[1]
*718 The issue before the ALJ and the District Court was whether Gilroy was disabled between June 15, 2003, and April 11, 2007. Dr. Deines’ psychological evaluation was sought and proffered in support of a subsequent application for Social Security disability and took place on June 6, 2008, a year and two months after the ALJ’s decision in these proceedings. Dr. Deines’ report and the subsequent award of benefits it helped to secure address the issue of Gilroy’s capacity to work during a period of time distinct from that before the ALJ. The District Court did not abuse its discretion in concluding that neither was material to the issue before him.
IV.
For the foregoing reasons, the judgment of the District Court will be affirmed.

. The Commissioner's brief accurately summarized those facts as follows:
After she allegedly became disabled, Gilroy worked as a nurse's aide and a labor packager.
Gilroy went shopping with her spouse, cleaned, washed laundry, took out 6 the trash, cared for her personal needs without assistance, cooked, vacuumed, and did not require frequent rest breaks during the day; During her alleged period of disability, Gil-roy got married and lived with her spouse, received visits from a friend, and socialized with some family members;
By her own admission, Gilroy could understand and follow instructions, make her own decisions, and help her five-year-old son with his homework;
Gilroy received minimal mental health treatment during the relevant period, and attended her first psychiatric evaluation in February 2006, almost three years after her alleged disability onset date;
Gilroy has never required a mental health hospitalization through the date of the ALJ's decision;
Gilroy’s medical records showed that her symptoms improved with treatment;
Gilroy’s records reflect noncompliance with treatment;
At appointments between February 2006 and November 2006, Gilroy’s treating psychiatrist, Dr. Wang, reported that she had adequate insight, adequate judgment, adequate impulse, control, normal speech, fair grooming, fair eye contact, a goal-directed thought process, and grossly intact cognition; and
State agency psychologist, Dr. Santilli, reviewed the evidence and determined that Gilroy’s impairments did not meet or equal *718 any listed impairment and that she retained the ability to work. Appellee's Br. at 43-44 (record citations omitted).